UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

JUN 0 4 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| LYNSEY PALMER<br>Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 4:10-cv-00334 |
| BANK OF AMERICA, N.A., BAC<br>HOME LOANS SERVICING, L.P.<br>AND RECONTRUST COMPANY,<br>N.A.<br>Defendants. | §<br>§<br>§<br>§<br>§ | (JURY DEMANDED) |

*[formerly]*

NO. 10-01-00801-CV

| | | |
|---|---|---|
| LYNSEY PALMER<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | |
| BANK OF AMERICA, N.A., BAC<br>HOME LOANS SERVICING, L.P.<br>AND RECONTRUST COMPANY,<br>N.A.<br>Defendants. | §<br>§<br>§<br>§<br>§ | 9TH JUDICIAL DISTRICT<br><br>MONTGOMERY COUNTY, TEXAS |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION IN OPPOSITION TO PLAINTIFF'S AMENDED COMPLAINT, OR, ALTERNATIVELY, RULE 21 MOTION TO DROP RICHARD PALMER FOR MISJOINDER (DOCUMENT 18); DEFENDANTS' CONSOLIDATED RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND RULE 12(f) MOTION TO STRIKE (DOCUMENT 19); AND DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND (DOCUMENT 20)**

TO THE HONORABLE VANESSA D. GILMORE:

NOW COMES LYNSEY PALMER, Plaintiff herein, and files this consolidated response to the *Motion in Opposition to Plaintiff's Amended Complaint, or, Alternatively, Rule 21 Motion to Drop Richard Palmer for Misjoinder* (Document 18); *Consolidated Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and Rule 12(f) Motion to Strike* (Document 19); and

*Defendants' Response to Plaintiff's Motion to Remand* (Document 20), all filed herein by Defendants herein BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, L.P., RECONTRUST COMPANY, N.A. (hereinafter 'the BAC DEFENDANTS'); and in support thereof, shows the court the following:

## BACKGROUND

1. The BAC Defendants have filed a *Motion in Opposition to Plaintiff's Amended Complaint, or, Alternatively, Rule 21 Motion to Drop Richard Palmer for Misjoinder* (Document 18); *Consolidated Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and Rule 12(f) Motion to Strike* (Document 19); and *Defendants' Response to Plaintiff's Motion to Remand* (Document 20).

2. These pleadings and the arguments contained therein are effectively 'inextricably intertwined' such that a consolidated response by Plaintiff is proper and necessary.

3. The three pleadings will be responded to in their logical order, as follows:

   a. A response to Document 18, in that, if Plaintiff's amendment of her complaint is accepted, diversity jurisdiction and the basis for removal must fail, and the case must then be remanded to State court where it belongs;

   b. Subject thereto, a response to Document 20, regarding that remand; and

   c. Subject thereto, a response to Document 19, the 12(b)(6) motion, which can be reached only if this Court has and retains jurisdiction and might then be empowered to pass upon the merits of Plaintiff's claims.

## 1. The Plaintiff's Amended Complaint should be accepted and any requisite leave granted for its filing

1. The BAC Defendants sought to remove this case on the sole basis of diversity jurisdiction. Plaintiff amended her pleadings, and added as a party defendant Richard Trevor Palmer, a non-diverse defendant.

2. On the basis that diversity was or now is imperfect, Plaintiff seeks remand. The BAC Defendants oppose remand.

3. Notably, the Defendant Richard Trevor Palmer has not answered and not asserted either a defense or a claim regarding jurisdiction.

4. The BAC Defendants had and have the burden of showing removability. *Guillory v PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir.2005).

5. Specifically:

    a. removal is proper only if there are no non-diverse defendants *properly joined* in the case (28 USC. § 1441(b));

    b. to demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court' (*Crockett v R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir.2006));

    c. as to the second prong in this case, the threshold question is whether 'there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant' (*Smallwood v Ill. Cent. R.R. Co.*, 385 F.3d

568, 573 (5th Cir.2004) (en banc), *cert. denied*, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005));

    d. in doing so, the burden of proof is on the removing party. (*Guillory, supra*, at 308);

    e. in deciding whether a party was improperly joined, a court must resolve all contested factual issues and ambiguities of state law in favor of the plaintiff. (*Id.*);

    f. as 'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' (*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir.1995) (citations omitted));

    g. therefore, the removal statute is to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand. (*Id.* at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.2000)); and, most importantly, that

    h. although a court in determining a removal and remand issue based on diversity jurisdiction may pierce the pleadings and consider summary judgment evidence – see, e.g., *Smallwood*, 385 F.3d at 574; *Hornbuckle v State Farm Lloyds*, 385 F.3d 543, at 545 – nevertheless, 'the focus of the inquiry must be on the joinder, not on the merits of the plaintiff's case' (*Smallwood, supra*, at 573).

6. It is in the application of these principles that the issue is joined.

7. The *Smallwood* line of cases stand for two propositions that are of some importance to the resolution of the removal / remand issue on the 'reasonable basis' analysis. These are:

    a. firstly,

        i. that '[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, *and that showing is equally dispositive of all defendants rather than to the in-state defendants alone,*' (*Smallwood,* at 575) there is no improper joinder; and

        ii. that, rather, in such a case, 'there is only a lawsuit lacking merit.' (*Smallwood,* at 574.) 'In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that "the plaintiff's case [is] ill[-]founded as to all the defendants."' (*McDonal v Abbott Labs.,* 408 F.3d 177, 183 (5th Cir.2005) (quoting *Smallwood,* at 574));

    b. And secondly, that for removal to be upheld, it is necessary that the party asserting improper joinder of the non-diverse defendant exclude all possible grounds of likely recovery. *See, e.g., Gasch, supra,* at 283; *Hornwood, supra,* at 545.

8. Here, the BAC Defendants are objecting that joinder is improper on behalf, as it were, of the silent Defendant Richard Trevor Palmer (hereinafter 'Trevor').

9. Moreover, the argument adduced by the BAC Defendants as to the merits of the joinder is that Plaintiff cannot prevail upon a contract claim against Trevor: and the BAC Defendants argue that they also are not liable in contract. (The contribution and indemnity claim against Trevor necessarily arises from his obligations this argued.)

10. Without needing to reach these issues, however, it is possible to dispose of the BAC Defendant's *Motion in Opposition to Plaintiff's Amended Complaint, or, Alternatively, Rule 21 Motion to Drop Richard [Trevor] Palmer for Misjoinder* (Document 18).

11. The Rule 21 issue may be disposed of out of hand. The BAC Defendants argue that, if Trevor's joinder was not improper because leave of Court was not first had, it is a misjoinder under Rule 21. Specifically, the basis adduced for examining the joinder under Rule 21 is that Plaintiff, the BAC Defendants allege, gave the Court federal-question jurisdiction under § 1331 by including a claim under the Federal Debt Collection Practices Act.

12. The inclusion of a single claim for relief ostensibly arising under Federal law, particular when combined with causes of action arising under State law, does not in itself create a federal question nor place a suit in Federal court. State law claims predominate in this action. *Poche v Texas Air Corps.*, 549 F.3d 999, (5th Cir. 2008). And as will be seen below, the intertwined nature of the various actions precludes the existence of a 'separate and independent federal question' under *Texas v Walker*, 142 F.3d 813, 816 – 817 (5th Cir. 1998). Nor in fact, given the congruity between the congener State and Federal acts, is it proper to say that the FDCPA claim as such arises under Federal law and can be resolved only by a Federal court. *See In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

13. In the case at bar, construing the FDCPA claim at its broadest still does not serve as basis on which to confer 'federal question' jurisdiction of this action upon this Court.

14. The BAC Defendants next advance the procedural argument in Document 18 that the Plaintiff's amendment was improper under Rule 15(a) in that leave of court is necessary

even in a Rule 15(a)(1)(b) context when 'an amendment would destroy diversity jurisdiction.' Assuming that leave is required, it must here be granted, even as it were retrospectively, on the basis of the very *Hensgens*[1] factors advanced by the BAC Defendants.

15. The BAC Defendants admit, as they must (*see* Document 18, Page 2, referencing Documents 3 and 11), that the parties jointly sought two 30-day extensions herein to attempt settlement.

16. Despite this, the BAC Defendants urge that the timing of the amended complaint is itself evidence that the joinder of Trevor as a party defendant was undertaken purely to attempt to strip this Court of diversity jurisdiction, and is palpably and transparently exploitative.

17. What the BAC Defendants elide, in pinning the amendment solely to their initial 12(b)(6) motion (Document 13) and speculating from there, is the intervening action of the BAC Defendants in initiating, on May 12, 2010, a new, second, and separate[2] non-judicial foreclosure of the real property at issue in this suit. *See* Document 15, Exhibits 9 and 10.

18. What the BAC Defendants further elide, in casting the amendment solely as a tactical response to their initial 12(b)(6) motion (Document 13), is that, *in* the intervening action of the BAC Defendants in initiating, on May 12, 2010, the new, second, and separate non-judicial foreclosure, the BAC Defendants gave notice of default and acceleration to Richard Trevor Palmer. *See* Document 15, Exhibits 9 and 10.

---

[1] Where the BAC Defendants have cited authority to the Court, Plaintiff will cite such cases in brief and without full citation.

[2] As a matter of black-letter law in Texas, each separate Notice of Acceleration, demand, and posting for non-judicial foreclosure is a separate act and event: *see* Tex. Prop. Code §51.002 (b) – (e); *see Dominguez v Castaneda*, 163 S.W.3d 318 (Tex. App. – El Paso 2005, pet. denied); *Powell v Stacy*, 117 S.W.3d 70 (Tex. App. – Fort Worth 2003, no pet.); *Fitzgerald v Harry*, No. 2-02-330-CV (Tex. App. – Fort Worth 2003, no pet.) (September 18, 2003). This is another of those things the BAC Defendants fail to mention or acknowledge.

19. What the BAC Defendants lastly elide, in casting the amendment solely as a tactical response to their initial 12(b)(6) motion (Document 13), is that, *in the intervening action of the BAC Defendants in initiating, on May 12, 2010, the new, second, and separate non-judicial foreclosure,* the BAC Defendants sought a sale by foreclosure in a new and different date to that previously noticed, posting the property for sale for the first Tuesday in July of 2010 (July 6, 2010).

20. When that context is considered, it is patently obvious that the two things that the amended complaint, Document 15, sought to do: joining Trevor *now that the BAC Defendants, by their new foreclosure notices, had made him a proper and indeed necessary*[3] *party,* and seeking to enjoin the *new* foreclosure posting and sale: flowed naturally from the BAC Defendants' own actions.

21. With that context, the *Hensgens* factors may now be considered in turn.

22. *Hensgens* provides, at 1182, that 'the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted. If it permits the amendment of the nondiverse defendant, it then must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.'

23. The material context of the amendment is that the BAC Defendants had chosen, *while this action was pending and after it had been removed,* to seek non-judicial foreclosure a

---

[3] *Hensgens* of course stands for the proposition that the characterization of the non-diverse defendant as 'indispensable' or 'permissive' is immaterial to the joinder analysis.

second time for a sale on July 6, 2010, *and had directed the statutory notices to Trevor as well as to Plaintiff.* In response, Plaintiff had no choice but to amend to join Trevor and to seek injunctive relief against the noticed foreclosure. This simple factual chronology militates strongly against any suggestion that the amended complaint in Document 15 was a purely tactical response to Document 13 having as its sole or primary purpose the 'defeat [of] federal jurisdiction.' **The first *Hensgens* factor favors Plaintiff's amendment**.

24. The BAC Defendants admit, as they must (*see* Document 18, Page 2, referencing Documents 3 and 11), that the parties jointly sought two 30-day extensions herein to attempt settlement. The BAC Defendants then chose, *while this action was pending and after it had been removed,* to seek non-judicial foreclosure a second time for a foreclosure on July 6, 2010, *and directed the statutory notices to Trevor as well as to Plaintiff.* It would be disingenuous for the BAC Defendants, in light of these facts and its own acts, to contend that 'plaintiff has been dilatory in ... amend[ing].' Thus, **the second *Hensgens* factor favors Plaintiff's amendment**.

25. The BAC Defendants are not merely defending Plaintiff's initial claims herein. They chose first to remove this case when faced with the prospect of injunctive relief's being entered against them in State court, and then (this cannot be stressed enough) chose, *while this action was pending and after it had been removed,* to seek non-judicial foreclosure a second time for a foreclosure on July 6, 2010, *and directed the statutory notices to Trevor as well as to Plaintiff.* The challenged amendment, Document 15, seeks to enjoin this new foreclosure attempt. It also seeks, however one denominates it, to hold Trevor liable for any loss and any deficiency should the threatened foreclosure go

forward: it is Trevor's failure to fulfill his obligations and his attempts to evade his responsibilities, including his failure to execute the necessary documents to effect the State court property division, that have landed Plaintiff *and* – to an extent – the BAC Defendants in court to begin with. Certainly, it is the combined actions of the BAC Defendants and of Trevor that threaten not only loss, but irreparable harm absent injunctive relief, to Plaintiff. Clearly, 'plaintiff will be significantly injured if amendment is not allowed.' Consequently, **the third *Hensgens* factor favors Plaintiff's amendment**.

26. The last of the *Hensgens* factors is the consideration of 'any other factors bearing on the equities.' Again, it is highly significant in this context that:

    a. The initial parties are in court at all, let alone this Court, because Trevor chose not to comply with the obligations imposed upon him by a State court divorce decree;

    b. The BAC Defendants chose first to remove this case when faced with the prospect of injunctive relief's being entered against them in State court, and then (this must be repeated) chose, *while this action was pending and after it had been removed, to seek non-judicial foreclosure a second time for a foreclosure on July 6, 2010, and directed the statutory notices to Trevor as well as to Plaintiff;*

    c. Had Plaintiff not amended her complaint *in response to the out of court actions undertaken by the BAC Defendants,* she would be faced with a foreclosure she had not sought to enjoin and potential deficiency exposure for which, like the foreclosure itself, she had not sought to hold Trevor accountable for despite his actions' having been materially and proximately causative of both the foreclosure, its basis, and any deficiency exposure.

It cannot colorably be contended that such a scenario would be the reverse of equitable. Moreover, this case is procedurally in its infancy, and the addition of another defendant and potential source of recovered damages rather favors the BAC Defendants than harms them. On an equitable basis, then, **the fourth *Hensgens* factor favors Plaintiff's amendment**.

27. The chronological context of the amended complaint – Document 15 – and the actions the BAC Defendants chose to undertake (*see* Document 15, Exhibits 9 and 10) do not support, and indeed contravene, the assertion made by the BAC Defendants (*see* Document 18, pp. 5 *et sequitur*) that Plaintiff's amendment was a 'palpable' attempt to destroy diversity jurisdiction and had as its 'primary, if not only, purpose' a tactical attempt to support a remand.

28. Similarly, given that the initial parties are in court at all, let alone this Court, because Trevor chose not to comply with the obligations imposed upon him by a State court divorce decree, *and* that the BAC Defendants chose first to remove this case when faced with the prospect of injunctive relief's being entered against them in State court, and then (this must be repeated) chose, *while this action was pending and after it had been removed,* to seek non-judicial foreclosure a second time for a foreclosure on July 6, 2010, *and directed the statutory notices to Trevor as well as to Plaintiff,* the propriety (under Rule 20) of such joinder – again light of the chronological context – is evident.

29. Trevor is a party to this matter in large part because, through their second set of foreclosure notices (Document 15, Exhibits 9 and 10), the BAC Defendants made him so. The BAC Defendants elected to reject both the provisions of the State court divorce decree and the Durable Power of Attorney executed by Trevor naming Plaintiff as his

Attorney in Fact to effect the modification agreement (*see* Document 15, Exhibit 8). Trevor's actions (and inactions) and those of the BAC Defendants, and the facts and transactions at issue herein, are inextricably intertwined to an extent more than sufficient to satisfy the requirements of Rule 20 and the authorities, such as *Crockett, supra,* relied upon by the BAC Defendants. Moreover, the issue of leave having been resolved in Plaintiff's favor under *Hensgens, supra,* it is the obligation and burden of the BAC Defendants under *Guillory, supra,* to show that Trevor is not properly joined. They cannot do so; or, rather, their attempt to do so is wholly predicated upon ignoring their own actions in beginning a new foreclosure proceeding while this case is pending and has been removed to this Court, and making Trevor a party to it, and ignoring Trevor's actions in creating the situation that is the only colorable basis for the attempts at foreclosure.

30. Equally, the contention advanced by the BAC Defendants that Plaintiff 'knew or should have known' of Trevor's liability when she first attempted to enjoin a threatened wrongful foreclosure in State court is disingenuous in the extreme. This case is wholly distinguishable from *Selman*. In State court, Plaintiff sought to enjoin an earlier wrongful foreclosure attempt *in which the BAC Defendants had not injected Trevor*. The May 2010 actions of the BAC Defendants have given rise to the claims being maintained herein.

31. The BAC Defendants improperly attempt to shift their burden *in the context of a consideration of proper joinder rather than in their 12(b)(6) Motion* as regards the merits of Plaintiff's claims against Trevor. At Paragraph 48, Page 15 of Document 15, Plaintiff states a claim against Trevor; she thereafter seeks contribution and indemnity. The BAC

Defendants are exercised over the denomination to be given to this claim, elevating form over substance. The question the Court must resolve is simply whether, in the light of the context – again carefully not mentioned by the BAC Defendants – of the second foreclosure attempt and the possibility of both an *in rem* loss of the property and a potential deficiency claim, all arising from the interaction of Trevor's actions and omissions and the actions elected by the BAC Defendants, Plaintiff could pursue a claim under Texas law against Trevor on her pleadings. The answer is necessarily, 'yes.'

32. The BAC Defendants' assertion that 'Plaintiff was dilatory' in adding Trevor rests, like all of the BAC Defendants' assertions upon a willful elision of the relevant chronology: the second foreclosure attempt and the injection, by the BAC Defendants, of Trevor into the case. Given that these actions, not the filing of Document 13, are the pertinent triggering date, it is disingenuous to call the amendment in Document 15 dilatory. *See, e.g., Schindler v Charles Schwab & Co., Inc.*, No. 05-0082, (E. D. La. 2005) (May 12, 2005).

33. Finally, the claims advanced by the BAC Defendants that 'plaintiff will not be significantly injured if her amended complaint is struck' and that in that light 'plaintiff [cannot] produce any "other factors bearing on the equities"' of weight may be considered together. Plaintiff has already noted the reasons why the intervening events and the actions of the BAC Defendants made amendment necessary, and the peril in which she would stand if she had not amended (or if amendment is disallowed). Only by ignoring the BAC Defendants' actions in seeking a new foreclosure could it be asserted with even minimal plausibility that Plaintiff is not faced with harm and that the equities do not favor amendment.

## 2. Based upon the amended complaint, remand is proper and necessary.

1. Although the joinder of Trevor as a party defendant was not undertaking as a tactical device to defeat diversity jurisdiction, and arose rather from the acts of the BAC Defendants in injecting him into this lawsuit, it is true that he is a non-diverse party defendant.

2. Therefore, if he is properly joined, this Court is deprived of diversity jurisdiction of this case, as all parties will necessarily admit.

3. Plaintiff has set out above the reasons why the amendment should be allowed.

4. The amendment being allowed, it then becomes the burden of the diverse defendant(s) – here, the BAC Defendants – to show that joinder is improper.

5. Under the *Smallwood – Gasch* line of cases previously cited, the BAC Defendants' burden then is to show that, *were the case remanded,* there are *no reasonable bases* for the district court to predict that the plaintiff might be able to recover against an in-state defendant *and* that the plaintiff could not establish a cause of action against the non-diverse party in state court: *i.e.,* it is incumbent upon the BAC Defendants to exclude all possible grounds of likely recovery by Plaintiff against Trevor *in a Texas state court.*

6. This the BAC Defendants have not done. It is their burden, and they have failed to meet it.

7. Accordingly, the case should be remanded as moved by Plaintiff.

## 3. Subject to the foregoing, this case, were it retained in this Court, should not be dismissed under Rule 12(b)(6) nor struck under Rule 12(f)

1. It should not, of course, be necessary for this Court to reach these issues. However, Plaintiff will briefly address them.

2. **As to the breach of contract claim,** the BAC Defendants cite *Carr* to the proposition that a party who has defaulted in her own performance of a contract may not enforce the contract on the other party. In fact, they cite *Carr* at 939 and include the important caveat '... unless the [first defaulting] party shows some valid excuse for failure to perform.' The pertinent portions of Document 15 set out in detail how – *in breach of the contract* – the BAC Defendants *prevented* Plaintiff from fully performing, and then used the situation they had created as the basis for seeking non-judicial foreclosure. Dismissal of Plaintiff's breach of contract action cannot be justified under Rule 12(b)(6).

3. **As to Plaintiff's DTPA claims,** the BAC Defendants rely upon *Fix* and cases decided thereunder. Were this a straightforward factual scenario regarding a loan modification, they might very well have a point. It isn't and they don't. Once again, it is only by ignoring their own acts that the BAC Defendants can impart any plausibility to their arguments. *Fix* specifically notes, at 160, that '[s]ince the *Riverside* decision [on which *Fix* relies], the supreme court has limited th[at] case to its facts, emphasizing that the claimant in *Riverside* sought only an extension of credit and nothing more. *La Sara Grain Co. v First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984).

4. Plaintiff has alleged that the BAC Defendants misled her in the context of a loan modification agreement *pursuant to a transfer of title to real property in accordance with the provisions of a decree of divorce.* The alleged misrepresentations and other DTPA violations are 'inextricably intertwined' with the contextual chronology that has been pointed out herein over and over, thus removing the case from the ambit of *Fix*. *See Knight v International Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982). Moreover, this was not, Plaintiff alleges, a situation involving the modification or

extension of credit *to the original property owner for the original property*, but was rather related to *a transfer of title, i.e., an acquisition of property by a new legal owner* (Plaintiff as femme sole, as her separate property awarded in a divorce, rather than Plaintiff and Defendant Trevor as husband and wife owning community property).

5. In *Flenniken v Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex. 1983), the Texas Supreme Court held that the purchaser of a home could sue the bank under the DTPA for an unconscionable course of conduct in foreclosing because, when viewed from the purchasers' perspective, the object of the transaction was not the object of 'seek[ing] to borrow money' but rather that of 'acquir[ing] a house.' *Flenniken,* at 708.

6. Here, the modification was *not* a 'pure loan of money' unconnected with a transfer of title and Plaintiff's acquisition of separate property; by the pertinent period in which the misrepresentations and deceptive practices befell, it was precisely an issue of the transfer of title and Plaintiff's acquisition of separate property, and not at all a 'pure loan of money.'

7. In the same way, the contention made by the BAC Defendants that the '**statutory fraud claim** borders on the frivolous' (*see* Document 19, Page 7) because there is no 'sufficient allegation concerning a conveyance of real property' is simply false, for the reasons stated in Paragraphs 3 – 6 of this section immediately above.

8. Equally, the BAC Defendants' attempts to evade the **Plaintiff's negligence claim** will not wash. Any reasonably close reading of Document 15 reflects that the negligence claims arose from the wrongful foreclosure and not the loan contract or the loan modification contract.

9. Yet the primary case upon which the BAC Defendants rely, *UMLIC*, at 613, recognizes that a 'secured party owes both the note maker and the guarantor the duty to discharge its respective contractual obligations properly.' *Long v NCNB – Texas Nat'l Bank*, 882 S.W.2d 861, at 869 (Tex. App. – Corpus Christi 1994, no writ); *Resolution Trust Corp. v Westridge Ct. Joint Venture*, 815 S.W.2d 327, 332 (Tex. App. – Houston [1st Dist.] 1991, writ denied); *Georgetown Assoc., Ltd. v Home Fed. Sav. & Loan Ass'n*, 795 S.W.2d 252, 256 (Tex. App. – Houston [14th Dist.] 1990, writ dism'd w.o.j.), and a secured party breaches this duty by negligently failing to exercise ordinary care in disposing of the security. *Long*, 882 S.W.2d at 869 (citing *T.O. Stanley Boot Co. v Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992)).

10. The BAC Defendants have failed to meet their burden as to this cause of action as well.

11. Nor do the BAC Defendants show that the **FDCPA claim** 'is of no moment.' Relying upon *Williams* and *Perry*, and relying on *Hampton* as to the Defendant ReconTrust Company, NA, they seek to bootstrap a claim that *no* party engaged in a foreclosure can fall within the ambit of the FDCPA. This is not, however, the law in the Fifth Circuit, which would extend the duties imposed by the FDCPA to at least one of the BAC Defendants. See *Kaltenbach v Richards*, 464 F.3d 524, 529 (5th Cir. 2006). This is doubtless why the BAC Defendants swiftly turn to the argument (*see* Document 19, pp. 9 – 10) that 'even if the BAC Defendants were debt collectors' Plaintiff's claim would fail because the May 12 (or 13) notice of default and acceleration 'was not the "initial communication."' This is simply incorrect. Again, as a matter of black-letter law in Texas, each separate Notice of Acceleration, demand, and posting for non-judicial foreclosure is a separate act and event: *see* Tex. Prop. Code §51.002 (b) – (e); *see*

*Dominguez v Castaneda,* 163 S.W.3d 318 (Tex. App. – El Paso 2005, pet. denied); *Powell v Stacy,* 117 S.W.3d 70 (Tex. App. – Fort Worth 2003, no pet.); *Fitzgerald v Harry*, No. 2-02-330-CV (Tex. App. – Fort Worth 2003, no pet.) (September 18, 2003). If this were not so, a holder of a mortgage could pass any given, noticed first Tuesday and then, without further notice or posting, hold a foreclosure sale on any subsequent first Tuesday, which is simply not the law.

12. In sum, then, if the 12(b)(6) Motion filed by the BAC Defendants were reached – as it ought not to be, given that remand to State court is proper and necessary – the said Motion would have to be denied on all counts and bases.

13. Finally, the request to strike under Rule 12(f) is ill-taken on any basis that does not, as the BAC Defendants do not, take the chronology heretofore adduced into account. All parties admit that injunctive relief was pronounced prior to remand, if not signed. Additionally, the BAC Defendants have since renewed their attempts to foreclose. Rule 12(f) sets a high standard and is duly disfavored (*see Bureerong v Uvawas,* 922 F. Supp. 1450, 1478 (C.D. Cal. 1996); here, the BAC Defendants can point to no statement of fact or allegation that is not supported by the record herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Lynsey Palmer, renews her prayer that the Court abstain from hearing this cause of action and remand the same to 9th Judicial District Court of Montgomery County, Texas, for resolution on the merits; subject thereto, that the Court deny the Motions made and relief sought by Defendants in Documents 18, 19, and 20; and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**THE OGG LAW FIRM**

_____
KIM K. OGG
State Bar No. 15230200
3215 Mercer, Suite 100
Houston, Texas 77027
Phone 713.974.1600
Fax 713.621.2106
kimogg@ogglawfirm.com

**ATTORNEY FOR PLAINTIFF,
LYNSEY PALMER**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION IN OPPOSITION TO PLAINTIFF'S AMENDED COMPLAINT, OR, ALTERNATIVELY, RULE 21 MOTION TO DROP RICHARD PALMER FOR MISJOINDER (DOCUMENT 18); DEFENDANTS' CONSOLIDATED RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND RULE 12(F) MOTION TO STRIKE (DOCUMENT 19); AND DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND (DOCUMENT 20) has been served upon the following by the method indicated:

Mr. Joshua J. Bennet  *Via Hand Delivery*
Akerman Senterfitt, LLP
Plaza of the Americas, Suite S1900
600 North Pearl Street
Dallas, Texas 75201

Dated: June 4, 2010

Kim K. Ogg